36226.   JONES *et al. v.* DARLING *et al.*

DECIDED OCTOBER 11, 1956—REHEARING DENIED NOVEMBER 29, 1956.

*Congdon & Leonard,* for plaintiffs in error.
*Harris, Chance & McCracken,* contra.

NICHOLS, J.   The record shows that the defendants filed general demurrers to the plaintiffs' petition in which it was alleged that the petition, "does not as a whole, nor do any of its several paragraphs or parts show a cause of action against said defendants," and that, "said petition shows upon its face that the instrument sued upon is a wagering contract and is therefore illegal and void."   These demurrers were overruled and no exception was taken to such judgment by the defendants.   Therefore, it became

the law of the case that the plaintiffs' petition set forth a cause of action against the defendants. *Loughridge* v. *City of Dalton*, 166 *Ga.* 323 (143 S. E. 393) ; *Ogletree* v. *Stanley*, 43 *Ga. App.* 253 (158 S. E. 465). However, such a ruling does not entitle the plaintiffs to *all* the relief sought as a matter of law.

The only evidence presented on the trial of the case was presented by the plaintiffs, and, before the defendants presented any evidence, the court directed a verdict for the plaintiffs in an amount equal to the interest due on the note from the date it was executed until the date of the payee's death. Although a verdict could not be directed for either party at the close of the plaintiff's evidence (*Spivey* v. *Barwick*, 157 *Ga.* 853 (1), 122 S. E. 594), an examination of the record in this case reveals that the plaintiffs have received a verdict for the full amount to which they are entitled under the pleadings and evidence, because under the terms of the note the plaintiffs were entitled only to the interest which became due on the note between the time it was executed and the time of the payee's death and were not entitled to the principal amount of the note which became canceled upon the payee's death. The interest became due semi-annually and was due and payable while the principal amount of the note was never due and payable under its own terms. Therefore the error in directing the verdict for the plaintiffs at the close of their evidence was harmless as concerns them, as were any other errors alleged to have occurred on the trial of the case. *Hall* v. *State*, 202 *Ga.* 619, 620 (44 S. E. 2d 234) ; *Childers* v. *Ackerman Constr. Co.*, 211 *Ga.* 350, 356 (86 S. E. 2d 227).

Moreover, the clause in the note, "in case of her death  .  .  . the note becomes canceled and the obligation of the maker ceases," is not ambiguous and the note could be enforced by the payee at any time after its maturity if the payee was still in life, and while death is certain, the time of death is not certain.

The contract is not a negotiable instrument because it does not contain an "unconditional promise to pay" (Code § 14-201 (2)), but on the contrary says in effect: "I am legally obligated to pay this obligation at maturity to you and you alone; if you are dead I am released from the contract." It is, accordingly, an unconditional contract in writing to pay the payee, and a release by the payee of the indebtedness to the maker insofar as

her estate is concerned. A note and covenant not to sue thereon amounting to a release may be executed contemporaneously, and the effect of the release will be to bar collection of the note. *Martin* v. *Monroe,* 107 *Ga.* 330 (33 S. E. 62) ; *Arnold* v. *Johnston,* 84 *Ga. App.* 138 (65 S. E. 2d 707). This being a release *pro tanto,* its effect is to bar collection *pro tanto*—that is, to bar collection under the conditions set forth in the condition annexed to the contract. "A release which states that it shall take effect on the occurrence of a condition precedent is operative as a discharge on the occurrence of the condition." Restatement of the Law, Contracts, p. 761, § 404 (1).

If a defeasance clause in a deed that the property shall revert to the grantor on the happening of a condition subsequent is not a wagering contract, by parity of reasoning the forgiveness of an indebtedness upon the happening of a condition subsequent should be given the same effect. Accordingly, the contract was not a wagering contract, and the judgment of the trial court denying the plaintiffs' amended motion for new trial must be affirmed.

*Judgment affirmed. Gardner, P. J., Townsend, Carlisle and Quillian, JJ., concur. Felton, C. J., dissents.*

FELTON, C. J., dissenting. The material part of the note sued on is as follows: "$10,000 Augusta, Ga. May 1st 1949. Five years after date the undersigned promises to pay to the order of Mary E. Jones with interest from date at 1 percent interest payable semi-annually in case of her death or marriage the note becomes canceled and the obligation of the maker ceases. Renewal at the end of five years."

1. I am of the opinion that the part of the note providing for cancellation of the obligation to pay in case of the death of the payee is ambiguous, which view I shall later discuss, but assuming for the sake of argument that the provision is unambiguous it is then contradictory and repugnant to the unconditional promise to pay $10,000 and must yield to it. If the provision is unambiguous, it means that the note could never be enforced because the death of the payee was certain to occur. The defendant in error treats the provision as unambiguous and at the same time interprets it to mean that the note would be canceled if the payee died before the maturity of the note. This position is inconsistent because if the provision as written is unambig-

uous, nothing additional can be read into it, such as "before maturity of the note." In the absence of any effort to reform the contract and, under the assumption that it is unambiguous, the rule laid down in *Drake* v. *Wayne*, 52 *Ga. App.* 654 (184 S. E. 339), and *Waxelbaum* v. *Carroll*, 58 *Ga. App.* 771 (199 S. E. 858) and various others, controls.

2. I think the terms of the note are ambiguous as to the time when the note would become canceled, which involves the question whether they meant that the debt would be canceled if the payee died before maturity or before the death of the maker. As to the meaning of ambiguity, see *Tarbutton* v. *Duggan*, 45 *Ga. App.* 31 (5) (163 S. E. 298); *Novelty Hat Mfg. Co.* v. *Wiseberg*, 126 *Ga.* 800 (55 S. E. 923). Evidence was offered in this case which tended to explain what the terms of the note meant. In substance the evidence was that the maker and payee owned $10,000 worth of bonds payable to them jointly "or to the survivor," and that it was their intention that the note should take the place of the bonds. Even if the addition of the provision that the note would be canceled by the marriage of the payee prevented the effectuation of the parties' intention, the evidence would still be relevant to show at what time and under what condition the note would be canceled by the payee's death. I think the court erred in disallowing the evidence, as the maker died before the payee.

3. I think the provisions of the note with reference to the cancellation of the same upon the payee's death are ineffective to cancel the note because they are not sufficient to make a complete gift inter vivos. Code §§ 48-101, 48-103, 48-104; *Drake* v. *Wayne*, 52 *Ga. App.* 654. It was not a gift causa mortis. Code § 48-201. The provision was an abortive testamentary disposition as it took effect upon the death of the payee, the party making the disposition, as the instrument was not signed and witnessed as a will and had not been probated. Code §§ 113-101, 113-102.

4. The provision is not enforceable as a condition in a contract. The majority of the rulings in other States seems to be to the contrary (127 A. L. R. 634) but the better reasoning is by the minority. There may be instances where such a cancellation of a debt upon the death of a party might be enforceable but in

general to permit such a result upon the happening of contingencies provided for by parties to contracts would encourage all kinds of gambling and wagering contracts. It would be much safer and sounder to adhere to our gift rules and rules of testamentary disposition both of which require strict conformity to the provisions of law. Another inequitable result of the enforcement of such a provision as we have in this case could be quasi-conditional gifts or gifts through contractual provisions which could put the debts receivable of a deceased beyond the reach of creditors of the estate. If when such specious contracts were made the party surrendering the debt was solvent they could not be attacked. If he was insolvent the passage of time might result in difficulty of proving the inequity of the transaction.

5. Code § 14-904 does not apply because it refers to a renunciation effective immediately and not one made conditionally in advance.

I think the court erred in denying the motion for a new trial.